```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION

SPIRCO ENVIRONMENTAL, INC.,       )
f/k/a Spirco Services, Inc.,      )
                                  )
              Plaintiff,          )
                                  )
     v.                           )    No. 4:05 CV 1437 DDN
                                  )
AMERICAN INTERNATIONAL SPECIALTY  )
LINES INSURANCE COMPANY,          )
                                  )
              Defendant.          )
```

### **MEMORANDUM**

This matter is before the court on the motion of plaintiff Spirco Environmental, Inc., for partial summary judgment (Doc. 55) and the motion of defendant American International Specialty Lines Insurance Company (AISL) for summary judgment (Doc. 59). The parties have consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 28.) A hearing was held on January 11, 2007.

### **I. Pleadings**

Plaintiff Spirco Environmental, Inc., brought this action against defendant AISL for breach of contract and bad faith failure to defend and indemnify in connection with insurance contracts entered into between the parties. (Doc. 1.) In the complaint, plaintiff alleges defendant issued to it two insurance policies, AISL Policy Nos. 819 78 69 and 267 41 44, which were in effect from October 7, 1997 to October 7, 1998, and October 7, 1998 to October 7, 1999, respectively. (Doc. 1 at 2.) Plaintiff alleges both policies imposed upon defendant a duty to indemnify plaintiff for liability claims expenses, including legal defense fees, costs, and expenses. Thereafter, plaintiff alleges, defendant refused to provide coverage for damages, fees, expenses and costs for an underlying litigation.[1] (Doc. 1 at ¶ 20.) In Count I,

---

[1] Plaintiff Spirco Environmental was both a plaintiff and a counterclaim defendant in Cause No. 4:05 CV 100. The crux of the issue in 4:05 CV 100 is whether Spirco Environmental, among other plaintiffs,

plaintiff alleges defendant breached the insurance contract by failing to defend or indemnify it in the underlying lawsuit, Cause No. 4:05 CV 100, and in Count II, plaintiff alleges defendant failed to defend or indemnify it in bad faith. (Doc. 1 at 4-6.) Count II has been dismissed by this court. (Doc. 32.)

In its answer, defendant AISL asserts as affirmative defenses that

1. the complaint fails to state a claim upon which relief can be granted,

2. plaintiff seeks economic loss, not property damage or environmental damage, and, therefore, these losses are not covered by the policy,

3. the policy excludes coverage for plaintiff's claims under Exclusion E,

4. the policy excludes coverage for plaintiff's claims under Exclusion F, and

5. plaintiff failed to give timely notice of the events or damages giving rise to plaintiff's claims.

(Doc. 15 at 9.)

Plaintiff moved for partial summary judgment with respect to defendant's second, third, and fourth affirmative defenses. It argues that the claims against it in 4:05 CV 100 arise from property damage as defined by the policies, and that Exclusions E and F do not bar coverage. (Doc. 58.)

Defendant also moved for summary judgment. (Doc. 59.) It argues that under the terms of the polices, for plaintiff to be covered, there must be 1) either bodily injury, property damage, or environmental damage, 2) that was caused by pollution conditions, and 3) which resulted from covered operations. It also argues that certain exclusions under the contract bar coverage for the liabilities assumed by Spirco Environmental and preclude coverage for interest and exemplary damages.

---

was liable under certain general indemnity agreements. This court has determined that Spirco Environmental is liable under the indemnity agreements. (Doc. 91, 92.)

-2-

## II. Summary Judgment Standard

Summary judgment must be granted, when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Union Elec. Co. v. Southwestern Bell Tel. L.P., 378 F.3d 781, 785 (8th Cir. 2004). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Union Elec. Co., 378 F.3d at 785. A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if substantial evidence exists so that a reasonable jury could return a verdict in favor of the non-moving party. Die-Cutting Diversified, Inc. v. United National Ins. Co., 353 F. Supp. 2d 1053, 1055 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence of specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004), cert. denied, 2004 WL 2153070 (U.S. Nov. 1, 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

## III. Undisputed Facts

The following material facts are without genuine dispute in the record before the court.

Plaintiff Spirco Environmental purchased two Contractor's Pollution Liability insurance policies from defendant AISL, AISL Policy CPO 819 78 69 (Policy 1) and AISL Policy 267 41 44 (Policy 2). Policy 1 was for coverage from October 7, 1997, through October 7, 1998, and Policy 2 was for October 7, 1998 through October 7, 1999. (Doc. 56 Exs. 1, 2.) These policies both provide, in relevant part:

**I.  INSURING AGREEMENT**

    **A.  COVERAGE**

        1.  The Company will pay on behalf of the Insured all sums that the Insured shall become legally obligated to pay as **Loss** as a result of **Claims** for Bodily Injury, **Property Damage** or **Environmental Damage** caused by **Pollution Conditions** resulting from **Covered Operations**. The Pollution Conditions must be unexpected and unintended from the standpoint of the **Insured**. The **Bodily Injury**, Property Damage, or **Environmental Damage** must occur during the Policy Period.

        \* \* \*

    **B.  DEFENSE**

        \* \* \*

        Upon the **Insured's** satisfaction of any applicable deduction amounts, **Claim Expenses** shall be paid by the Company and such payments shall be included as **Loss** and reduce the available Limit of Liability.

        \* \* \*

**II.  EXCLUSIONS**

This Policy does not provide coverage and the Company will not pay **Loss** for:

        \* \* \*

    **E.**  Any **Claim** based upon or arising out of liability of others assumed by the **Insured** under any contract or agreement. This exclusion does not apply to liability:

        1.  Arising from **Covered Operations** performed by subcontractors of the **Named Insured**, provided such liability is assumed by the **Named Insured** in a written contract with its client for such operations and the **Bodily Injury, Property Damage** or **Environmental Damage** occurs subsequent to the execution of the contract;

        2.  Assumed in a contract or agreement that is an **Insured Contract**, provided that the

>           **Bodily Injury**, **Property Damage** or
>           **Environmental Damage** occurs subsequent to
>           the execution of the contract or agreement;
>           or
>
>      3.   That the **Insured** would have in the absence
>           of the contract or agreement.
>
> **F.** Any **claim** for punitive, exemplary or multiplied
>      damages, or statutory assessments, or any civil,
>      administrative or criminal fines or penalties, or
>      the return or reimbursement of legal fees, costs
>      or expenses.

(Doc. 57, Exs. 1, 2.)

"Property Damage," under the policies, is defined as:

> 1. Physical injury to or destruction of tangible property including the resulting loss of use thereof; or
>
> 2. Loss of use of tangible property that has not been physically injured or destroyed.

(Doc. 57 Ex. 1 at 9, Ex. 2 at 9.) "Covered Operations" is defined as "Those physical operations and activities designated in the Declarations, which are performed by or on behalf of the **Named Insured** at a job site." "Loss" is defined as "[m]onetary awards or settlements of compensatory damages arising from **Bodily Injury** or **Property Damage**; . . ." (Id. at 8.)

In February 1997, plaintiff Spirco Environmental, an asbestos abatement company, and Wellsford Commercial Properties, LLC, entered into a contract whereby Spirco Environmental would remove asbestos from an office building in New Jersey. At the time Spirco Environmental performed the work for Wellsford, one or both of the Contractor's Pollution Liability policies issued by AISL was in effect.

As a condition of the contract between Wellsford and Spirco Environmental, Spirco Environmental obtained a performance bond on the project from The Insurance Company of the State of Pennsylvania (ICSP). Plaintiff Spirco Environmental and ICSP also entered into two other contracts, captioned "General Agreement of Indemnity." Both agreements provided, that the "[u]ndersigned agree[s] to pay to Surety upon demand any premium due and all loss and expense, including attorney fees,

incurred by Surety by reason of having executed any Bond." (Cause No. 4:05 CV 100, Doc. 62 Ex. 62.2 at 1, 2) (SWC 01302, 01303).

A dispute arose between Wellsford and Spirco Environmental regarding the asbestos removal contract.[2] Spirco Environmental brought the dispute before an arbitration panel, arguing that it was owed $150,733 remaining on the contract. Wellsford asserted a counterclaim for damages against Spirco Environmental in excess of $4,000,000, alleging that Spirco Environmental failed to complete the abatement within industry standards and that it exacerbated the asbestos contamination. Wellsford also brought a claim against ICSP as surety.

In a letter dated September 26, 2001, defendant AISL agreed to provide Spirco Environmental with coverage for Spirco Environmental's damages, fees, expenses and costs, noting that Wellsford's counterclaim in the arbitration constituted a claim covered by the policies.

Spirco Environmental eventually prevailed in the arbitration against Wellsford, and it was determined that Spirco Environmental was owed the $150,733 left due on the asbestos removal contract. However, ICSP, as surety who participated in the arbitration, incurred $810,475.57 in legal fees. ICSP, the surety, demanded that Spirco Environmental, and others, indemnify it for these fees. Spirco Environmental and other plaintiffs brought a declaratory judgment action, seeking a determination that it did not owe ICSP the fees under the General Agreements of Indemnify. See Cause No. 4:05 CV 100. In that underlying litigation, this court determined that Spirco Environmental and others have a duty to indemnify their surety for the fees incurred in the arbitration. The court entered judgment in favor of ICSP for $794,964.38, plus prejudgment interest of nine percent. (Cause No. 4:05 CV 100, Docs. 132, 133.)

Spirco Environmental is now seeking from AISL indemnification for its fees and costs associated with the underlying litigation, Cause No.

---

[2]After Spirco Environmental claimed it had performed all of the asbestos removal work under the contract, Wellsford alleged that asbestos had been found in the building after Spirco Environmental claimed it was finished. Wellsford refused to pay Spirco Environmental the $150,733 balance left on the contract. (Cause No. 4:05 CV 100 Doc. 61 Attach. 1.)

4:05 CV 100. It argues that the litigation before this court is a continuation of the Wellsford arbitration, for which AISL provided coverage.

## IV. Discussion

Defendant AISL argues that the claims against Spirco Environmental by ICSP, in Cause No. 4:05 CV 100, do not fall within any of the enumerated losses covered in the policies. It argues that Spirco Environmental is seeking economic loss, which is not property damage. It asserts that ICSP seeks its cost of defending itself against Wellsford's claims from Spirco Environmental, which Spirco Environmental is, in turn, seeking from AISL. AISL argues that the defense costs are not covered operations.

As an initial matter, the court must decide which state's law applies to the interpretation of the coverage afforded plaintiff by these two insurance policies. The court will look to the Missouri choice of law rules to determine what substantive rules of decision apply to this contract dispute. Tompkins v. Erie R.R. Co., 304 U.S. 64 (1938). The court finds that Missouri courts would apply the substantive law of Missouri in the interpretation of these insurance policies, using the "most significant relationship" test. See Dillard v. Shaughnessy, Fickel, and Scott Architects, Inc., 943 S.W.2d 711, 715 (Mo. Ct. App. 1997). Missouri courts would apply Missouri law to determine the interpretation of an insurance contract where the insured was a resident of Missouri.

### A. Policy Terms

The policies by their express language provide coverage for Spirco Environmental's costs associated with the underlying litigation against ICSP, Cause No. 4:05 CV 100.

By their terms, the insurance policies at issue provide that defendant AISL will pay for "loss" if all three of the following conditions are met:

    1.    there exists bodily injury, property damage, or environmental damage

2.   caused by Pollution Conditions

        3.   resulting from Covered Operations.

(Doc. 57 Exs. 1, 2.) There is no dispute that bodily injury or environmental damages are not at issue here. Spirco Environmental argues that ICSP's claims against it in 4:05 CV 100 fall under the policies' definition of "property damage." Defendant argues that the underlying claim is not for property damage, but is for economic loss stemming from a contract dispute.

"Under Missouri law the plaintiff has the burden of showing that the loss and damages are covered by the policy. . . ." American States Ins. Co. v. Mathis, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998). Unless there is an ambiguity, the contract will be enforced as written. Id. "[T]he meaning of an unambiguous contract presents a question of law appropriate for summary judgment." McCormack v. Citibank, N.A., 100 F.3d 532, 538 (8th Cir. 1996). "Conversely, the interpretation of an ambiguous contract presents a question of fact, thereby precluding summary judgment." Id. (quoting Michalski v. Bank of Am. Ariz., 66 F.3d 993, 996 (8th Cir. 1995)). Whether the contract is ambiguous is a question of law, and a contract is not ambiguous just because the parties disagree about its meaning. Sligo, Inc. v. Nevois, 84 F.3d 1014, 1019 (8th Cir. 2005). The court concludes that the policy language at issue is not ambiguous.

The court must first identify the nature of the underlying judicial action to determine whether AISL is obligated under the policies to cover losses resulting from it. The underlying lawsuit was a declaratory judgment action concerning the interpretation of two indemnity agreements. Under these agreements Spirco Environmental is obligated to indemnify ICSP for its participation in the arbitration of the Wellsford asbestos removal dispute.

The court concludes from the unequivocal record that the underlying action, 4:05 CV 100, involved a loss to Spirco Environmental as a result of property damage. The underlying lawsuit, and the loss resulting from it, arose from property damage that occurred when Spirco Environmental performed the asbestos removal.

The language of the policies is clear that for a loss to be covered, the loss must be a result of "Property Damage." "Property Damage" is defined in the policies as "physical injury to or destruction of tangible property including the resulting loss of use thereof," or "[l]oss of use of tangible personal property that has not been physically injured or destroyed." (Doc. 57 Exs. 1, 2.) Missouri courts looked to policy language to determine whether losses are for "property damage." See generally American States Ins. Co. v. Herman C. Kempker Constr. Co., Inc., 71 S.W.3d 232, 238 (Mo. Ct. App. 2002) (decrease of fair market value can be property damage under policy).

Here, the asbestos removal dispute resulted in asserted physical injury to the property at the New Jersey location. The parties here do not dispute this. Earlier, AISL agreed that "Spirco is alleged to have caused property damage during asbestos abatement activities . . . ." (Doc. 57 Ex. 9.) AISL also sent a correspondence stating "the claim relates to property damage allegedly caused by Spirco . . . ." (See Doc. 75, Ex. 1.) However, now, defendant argues that the dispute in 4:05 CV 100 does not involve property loss, but was a contract dispute. Plaintiff argues that the underlying lawsuit "arises" from the property damage, and is therefore a covered loss.

The applicable policies use of "arises out of" creates broader coverage than would "caused by" and an unbroken chain of events need not be shown to provide coverage. Colony Ins. Co. v. Pinewood Enterprises, Inc., 29 F. Supp. 2d 1079, 1083 (E.D. Mo. 1998). "The words 'arising out of' are ordinarily understood to mean 'originating from,' or 'having its origin in,' 'growing out of' or 'flowing from.'" Martin v. Cameron Mut. Ins. Co., 763 S.W.2d 710, 711 (Mo. Ct. App. 1989) (quoting Cameron Mut. Ins. Co. v. Ward, 599 S.W.2d 13, 15 (Mo. Ct. App. 1980)).

The policies at issue here state that the defendant will pay "loss" "as a result of Claims for Bodily Injury, Property damage . . . ." (Doc. 57 Exs. 1, 2.) "Loss" is defined as "[m]onetary awards or settlements of compensatory damages <u>arising from</u> **Bodily Injury** or **Property Damage**; . . ." (Id. at 8, emphasis added.) Therefore, the "loss" defendant is obligated to indemnify plaintiff for is broadly

defined, and a monetary award or settlement "growing out of" or "flowing from" or "originating from" property damage is covered.

The dispute at issue in 4:05 CV 100 "arose from" the "property damage" that occurred when Spirco Environmental performed the asbestos removal work. While this judicial action was a contract dispute, the contract dispute "originated from" the property damage Spirco Environmental allegedly caused while performing its asbestos work. Because the insurance policies at issue here provide for coverage for loss for monetary awards or settlements of damages, the monetary award Spirco Environmental was ordered to pay is covered by defendant's policies. Further, the asbestos work that resulted in alleged property damage was also caused by pollution conditions, defined as "discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants . . . ." (Doc. 57 Exs. 1, 2.) Asbestos is a pollutant as within the language of the policies. Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, 54 S.W.3d 661, 666 (Mo. Ct. App. 2001). The asbestos removal was also a "covered operation," because it was performed on behalf of Spirco Environmental at the job site. (Doc. 57 Exs. 1, 2.)

### B. Exclusion E

Defendant also argues that, even if the policy provided coverage, Exclusion E bars coverage.

Exclusion E excludes from coverage:

E. Any **Claim** based upon or arising out of liability of others assumed by the Insured under any contract or agreement. This exclusion does not apply to liability:

    1. Arising from **Covered Operations** performed by subcontractors of the **Named Insured**, provided such liability is assumed by the **Named Insured** in a written contract with its client for such operations and the **Bodily Injury, Property Damage** or **Environmental Damage** occurs subsequent to the execution of the contract;

>     2.  Assumed in a contract or agreement that is an **Insured Contract**, provided that the **Bodily Injury**, **Property Damage** or **Environmental Damage** occurs subsequent to the execution of the contract or agreement; or
>
>     3.  That the **Insured** would have in the absence of the contract or agreement.

(Doc. 57 Exs. 1, 2.)

"Exclusionary clauses in insurance policies are to be liberally construed against the insurer." Friar v. Statutory Trustees of Kirkwood Sports Ass'n, Inc., 959 S.W.2d 808, 809 (Mo. Ct. App. 1997).

Here, Spirco Environmental did not assume the liability of "others" for property damage. As the surety, ICSP's rights and liabilities are those of the principal. See City of Independence for Use of Briggs v. Kerr Const. Paving Co., 957 S.W.2d 315, 319 (Mo. Ct. App. 1997). ICSP would have incurred no damages in the arbitration had it not executed the bond on behalf of Spirco Environmental. ICSP's liability arises directly from the claims against Spirco Environmental for allegedly failing to properly perform the asbestos work. Even the direct claims against ICSP by Wellsford arose only because of its status as surety. There was no "other" for Spirco Environmental to assume the liability of; ICSP's liability *was* Spirco Environmental's liability.[3]

---

[3]Plaintiff further argues that Exclusion E does not apply because the performance bond and the indemnity agreements are insured contracts, pursuant to Exception 2 above. The polices define "Insured Contract" as

>     2.  That part of any other contract or agreement pertaining to your business (including indemnification of a municipality in connection with work performed for a municipality) under which you assume tort liability of another party to pay for Bodily Injury, Property Damage or Environmental Damage to a third person or organization. Tort liability means a liability that would be imposed by law in absence of any contract or agreement.

(Doc. 57 Exs. 1, 2.)

Definition two would apply if the GAIs were insured contracts or contracts where Spirco Environmental assumed tort liability, or

Exclusion E does not bar coverage.

### C. Exclusion F

Defendant also argues that Exclusion F applies, which bars coverage for any

> claim for punitive, exemplary or multiplied damages, or statutory assessments, or any civil, administrative or criminal fines or penalties, or the return or reimbursement of legal fees, costs or expenses.

Defendant argues that, if this court finds that the policy terms afford coverage and that Exclusion E does not apply, then any and all of these listed damages, that Spirco Environmental was ordered to pay in 4:05 CV 100, should be excluded. Specifically, it argues that the statutory interest Spirco Environmental was ordered to pay under Mo. Rev. Stat. § 408.020 is barred under this provision as a statutory assessment.[4] Plaintiff argues that the statutory interest is not a statutory assessment under the policy and that the legal fees contemplated by Exclusion F were the court ordered variety and not legal fees awarded under contract.

---

liability imposed by law and not contract, for property damage. While other courts have held under similar facts that indemnity agreements are insured contracts, see U.S. Fidelity & Guaranty Co. v. Continental Cas. Co., 120 S.W.3d 556, 560-61 (Ark. 2003), this court is hesitant to find that, on one hand, Spirco Environmental did not assume the liability of another, and on the other, that the GAIs are insured contracts because Spirco Environmental assumed ICSP's tort liability.

[4]Missouri Revised Statute Section 408.020 provides

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made.

Mo. Rev. Stat. § 408.020.

In 4:05 CV 100, Spirco Environmental was ordered to pay $794,964.38, plus interest at the rate of nine percent per annum from May 9, 2003 until January 5, 2007. (Doc. 133.) This judgment was for ICSP's legal fees in the underlying arbitration.

As stated above, insurance exclusions to coverage are strictly construed against the insurer, especially when "insurance is first 'granted' and is then followed by provisions limiting or avoiding liability." Versaw v. Versaw, 202 S.W.3d 638, 643 (Mo. Ct. App. 2006).

The statutory interest awarded by this court in 4:05 CV 100 is a "statutory assessment" for which Exclusion F bars coverage. This interest award is a creature of statute and was not required by any agreement between the parties. Further, the ordinary use of "assessment" in Exclusion F includes the court's order that the statutory interest be paid. Cf., Jerry Bennett Masonry Contractor, Inc. v. Crossland Const. Co., Inc., --- S.W.3d ---, 2007 WL 465517, at *1 (Mo. Ct. App. Feb. 14, 2007 ("trial court error in its failure to assess pre-judgment interest at the rate of 9%, as provided in § 408.020 . . . ."). Therefore, AISL is not liable to reimburse Spirco Environmental for the interest awarded to ICSP in 4:05 CV 100.

Exclusion F does not exclude coverage for the legal fees Spirco Environmental was ordered to pay in 4:05 CV 100, as defendant argues. Strictly construed, Exclusion F deals with fines, penalties, and other monies awarded by a court under the common law or under statute, which could be punitive in nature or ordered to a losing party. The legal fees at issue pertain to "return or reimbursement" ordered by the court at the end of litigation. And the legal fees at issue are ICSP's that it incurred under contract, and that Spirco Environmental must now pay under contract. They were not ordered paid by a court for Spirco Environmental's actions during litigation or arbitration, but because of Spirco Environmental's contract liability.

Exclusion F does not wholly bar coverage.

In summary, the motion of plaintiff for partial summary judgment is sustained in that the court concludes that the subject policies provide coverage, that Exclusion E does not apply, and that Exclusion F excludes coverage for the statutory interest. The motion of defendant

for summary judgment is denied. An order in accordance with this memorandum is filed herewith.


          /S/    David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 16, 2007.